UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-159-RJC
(3:06-cr-151-RJC-1)

| | |
|---|---|
| **GUISEPPE PILEGGI,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**THIS MATTER** is before the Court on remand from the Fourth Circuit Court of Appeals with regards to Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1); see (Doc. Nos. 21, 22).

**I.    BACKGROUND**

Petitioner was charged along with 13 co-defendants in a fraudulent sweepstakes call-center scheme run out of Costa Rica which targeted United States citizens. Petitioner, a Canadian citizen, was alleged to have owned and managed one or more of the call centers. Petitioner was charged by Superseding Bill of Indictment with one count of conspiracy in violation of 18 U.S.C. §§ 371 and 2326(2)(A) and (B) (Count 1), and 22 counts of wire fraud in violation of 18 U.S.C. §§ 1343, 2326(2)(A) & (B) and (2)  (Counts 2-23);  (Crim. Case No. 3:06-cr-151, Doc. No. 113) (Superseding Bill of Indictment).

The case proceeded to a four-day jury trial before the Honorable Frank Whitney in January 2008. The Government presented evidence that the United States Postal Service engaged in a large-scale sweepstakes fraud investigation with the assistance of the Costa Rican Government. Costa Rican law enforcement conducted surveillance of several individuals including the Petitioner, and

1

executed a search of sixteen sites simultaneously on May 16, 2006, pursuant to Letters Rogatory submitted by the U.S. Government. The search locations included Tico Racer (an auto accessory store that Petitioner owned with co-conspirator Herman Kankrini), Petitioner's home, and several call centers from which the sweepstakes fraud was being conducted. A Costa Rican law enforcement agent testified that he arrested Petitioner outside the Tico Racer store at around 8:30 AM and seized the red and black thumb drive he was wearing around his neck. Costa Rican agents also seized a number of computers, another thumb drive from the call center a Rohmoser, and other digital evidence during the search. They seized a computer, records, and $238,000 in cash from Petitioner's home. Agents seized a number of documents from Kankrini's car including notebooks full of his and Petitioner's handwritten notes documenting victims' losses in the sweepstakes scheme. Costa Rican authorities summarized the seized evidence in an "Acta" for each location, and United States Postal Inspector Jose Gonzalez personally transported the evidence to the United States under secure conditions. Inspector Gonzalez testified that a computer expert from his office, Dan Dorman, then copied the digital information so that the originals would not be damaged. The records, which were introduced at trial, included scripts for defrauding victims, hundreds of victims' personal information, notes regarding the amounts in which the victims had been defrauded, details about the money they victims wired or transmitted via bank accounts, and plans to further defraud various victims. Several fraud victims who were not specifically charged in the indictment testified that they received phone calls informing them of sweepstakes winnings and requiring payment for items such as taxes, customs, courier fees and/or insurance, which they paid, and for which they never received any winnings. Victim Frank Pytel, who is elderly and infirm, lost more than $800,000 in the scheme. Three of Petitioner's co-conspirators, Victor Kustra, Herman Kankrini, and Larry Cunningham, testified that Petitioner

owned various call centers over the years from which he conducted the sweepstakes fraud, that he was actively engaged in the fraud, that he personally profited from each of the victims' losses, and that no legitimate business was conducted from any of his call centers. Trent Nyffler, who pled guilty to conspiracy, testified that he sold lists of personal information for individuals that Petitioner victimized in the sweepstakes scheme for three or four years.[1]

Petitioner testified at trial against counsel's advice. His decision to testify prompted counsel to move to withdraw from the representation, which the Court denied, and to request that Petitioner be permitted to testify in the narrative, which the Court granted. Petitioner testified that the Government's witnesses were lying about the timing and circumstances of his arrest, that the information gleaned from his thumb drive and computer had been tampered with, that he knew Kankrini was involved in something illegal that Petitioner failed to report to authorities, that the $238,000 found in his home was Kankrini's, that he paid for his home and cars through unreported profits from Tico Racer and its associated magazine, and that he was never engaged in a sweepstakes fraud scheme.

The jury found Petitioner guilty of all 23 counts with which he was charged, forfeiture of $8,381,962 from proceeds of the conspiracy, and $32,761 from proceeds of the scheme to commit wire fraud. (Id., Doc. No. 246-47).

The Presentence Investigation Report ("PSR") calculated the base offense level as seven because the offense involves a violation of 18 U.S.C. §§ 371, 1343, 1341, 2314 and 506(a)(2). (Id., Doc. No. 326 at ¶ 40). Thirty levels were added for the following specific offense characteristics: known or reasonably foreseeable loss amount over $7,000,000 (20 levels); more than 250 victims (six levels); misrepresentation that the Petitioner and others were acting on behalf of a government

---

[1] On rebuttal, Nyffeler identified Petitioner's voice as that of "Robert Hailey" with whom he had spoken on the phone on more than 100 occasions. (Id. Doc. No. 412 at 101-03).

agency (two levels); a substantial part of the scheme was committed outside the United States (two levels). (Id., Doc. No. 326 at ¶¶ 410-44). Two levels were added because Petitioner knew or should have known that the majority of the victims were elderly or otherwise particularly susceptible to criminal conduct, four levels were added because Petitioner was an organizer or leader in a criminal activity involving at least five participants. (Id., Doc. No. 326 at ¶¶ 45-47). Another two levels were added for obstruction of justice because Petitioner perjured himself at trial. (Id., Doc. No. 326 at ¶¶ 30-35, 45). He received no adjustment for acceptance of responsibility. (Id., Doc. No. 326 at ¶ 50). The total offense level was forty-three. (Id., Doc. No. 326 at ¶ 51). Petitioner had no criminal history points and a criminal history category of I. (Id., Doc. No. 326 at ¶ 54). The resulting guideline range is life imprisonment, up to five years of supervised release, fines between $25,000 and $250,000, and restitution. (Id., Doc. No. 326 at ¶¶ 71, 74, 79, 82).

The Government moved to dismiss Count (18) at the sentencing hearing, which was granted. (Id., Doc. No. 487 at 3). The Court adjudicated Petitioner guilty, sentenced him to a total of 600 months' imprisonment followed by three years of supervised release, imposed $3,952,985 in restitution, and entered a final Order of forfeiture in accordance with the jury's verdict. (Id., Doc. No. 357, 424).

On direct appeal, Petitioner argued that his sentence amounted to a life sentence in violation of the United States' extradition agreement with Costa Rica, and exceeded the statutory maximum for each count, which constituted cruel and unusual punishment. (4th Cir. Case No. 08-4237, Doc. No. 50 at 20). The Fourth Circuit agreed that the sentence was based on clearly erroneous facts, thus making Petitioner's 600-month sentence procedurally unreasonable. It remanded for resentencing before a different judge. United States v. Pileggi, 361 Fed. Appx. 475 (4th Cir. 2010).

The case was reassigned to the undersigned on remand and Petitioner was resentenced to a total of 300 months' imprisonment (60 months as to Count (1) and 240 months each as to Counts (2)-(17) and (19)-(23) running concurrently with each other and consecutively to Count (1)), and restitution in the amount of $20,726,005.18. (Crim. Case No. 3:06-cr-151-RJC, Doc. No. 595) (Amended Judgment). On appeal, the Fourth Circuit held that the Court was barred from reconsidering the amount of restitution on remand and reinstated the previous restitution order. United States v. Pileggi, 703 F.3d 675 (4th Cir. 2013); see (Crim. Case No. 3:06-cr-151-RJC, Doc, No. 626) (Second Amended Judgment).

Petitioner filed the instant Motion to Vacate pursuant to 28 U.S.C. § 2255 on March 31, 2014 raising a number of claims, including that counsel was ineffective to object and raise on appeal a fatal variance between the charges and evidence on the substantive wire fraud in Counts (2) through (17) and (19) through (23). (Doc. No. 1). The Court denied and dismissed the Motion to Vacate finding, *inter alia*, that no variance occurred. (Doc. No. 16). The Fourth Circuit granted a partial certificate of appealability on a single issue: "[w]hether the district court erred in rejecting Pileggi's claims that his trial and appellate counsel were ineffective in failing to challenge a variance in the evidence supporting Counts 2 to 3." (Case No. 17-7473, Doc. No. 6). The Fourth Circuit found that there is no dispute that the Government proved the conspiracy in Count (1) and the fraudulent scheme underlying Counts (2) through (23). However, it remanded for further proceedings because the arguments on appeal were different from those presented before this Court and the record on appeal was not sufficiently developed to permit meaningful appellate review of the scope of the discrepancy between the indictment and evidence and any resulting prejudice. (Doc. No. 21). On remand, the Government filed a Response addressing the variance issue and Petitioner filed a Reply. (Doc. Nos. 25, 29).

The Government argues that no variances occurred with regards to Counts (12) and (17), and that minor, non-prejudicial variances exist with regards to Counts (2), (3), (5), (7)-(11), (13)-(16), and (21)-(23). The Government asserts that the evidence supports Petitioner's convictions for Counts (4), (6), (19), and (20), however, it is not able to identify and locate all of the evidence that it believes supported the convictions now that more than a decade has elapsed since Petitioner's trial. See (Doc. No. 26) (Trial Exhibit 98, sealed, is missing page 34). The Government argues that, even if the convictions and sentence for Counts (4), (6), (19), and (20) are vacated, there is no need to resentence Petitioner because he received independent, concurrent 240-month sentences for all of the wire fraud counts.

Petitioner argues in his Reply that, when analyzed on a count-by-count basis, there were fatal variances in the wire fraud counts. Although the Government proved a scheme to defraud, it failed to show that any of the indictment's substantive count allegations occurred and because of "pervasive inconsistencies" between the allegations and evidence. (Doc. No. 29 at 2). He argues that "[e]ven minor discrepancies would raise questions concerning whether the government had sufficient evidence to prove the indictment" and that the "more than mere discrepancies" combined with a lack of evidence and amounted to "a constitutionally fatal variance." (Id.). The "complete disalignment of the indictment" and proof at trial "calls for … dismissal of the indictment" and that counsel "should have, like any attorney would have, brought the factual variance to the attention of the trial or direct appeal court." (Doc. No. 29 at 3). Petitioner conclusively asserts that he was prejudiced by the variances between the Superseding Bill of Indictment and the evidence. However, he has made no specific effort to address prejudice. He appears to rely on *per se* reversible error and makes only conclusory allegations that prejudice occurred. See (Doc. No. 1 at 17) (arguing that there was no testimony at trial to establish the specific instances of wire fraud

and that counsel failed to make a satisfactory objection); (Doc. No. 1 at 18) (arguing that a variance argument would have been successful on appeal); (Doc. No. 13 at 6) (arguing that trial counsel's failure to object to the variance and that appellate counsel's failure to present the issue for plain error review "constitut[ed] deficient performance that prejudiced Mr. Pileggi."). (Doc. No. 29 at 2) (arguing that a fatal variance occurred and that "even minor discrepancies would raise questions concerning whether the government had sufficient evidence to prove the indictment.").

## II. SECTION 2255 STANDARD OF REVIEW

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have

been different absent counsel's deficient performance, but rather, it "can only grant relief under … Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.[2] See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The issues presently before the Court are the scope of the variance between the substantive wire fraud counts alleged in the Superseding Bill of Indictment and the evidence presented at trial, and any resulting prejudice.[3]

The Fifth Amendment to the United States Constitution provides for a right to indictment by grand jury. U.S. Const. Amend. V; United States v. Floresca, 38 F.3d 706, 709 (4th Cir. 1994) (en banc). This right is violated when the proof offered at trial permits a jury to convict a defendant

---

[2] Petitioner has requested an evidentiary hearing. See (Doc. No. 13 at 21). The Government does not believe that an evidentiary hearing would aid the Court's resolution of this matter. (Doc. No. 25 at 14).

[3] It does not appear that Petitioner's argument about the sufficiency of the evidence is within the scope of the Certificate of Appealability. See (Case No. 17-7473, Doc. No. 6). However, even if it was, this claim is meritless for the reasons set forth in the Government's Response, (Doc. No. 25), and in this Order.

for a different offense than that for which he was indicted and constructively amends the indictment, resulting in a fatal variance. See United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996) ("When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is *per se* reversible error."). Not all variances between an indictment and the proof offered at trial constitute a constructive amendment of an indictment. While a constructive amendment or fatal variance is *per se* reversible error, a "mere variance" in the indictment violates a defendant's rights only if it prejudices him. Id. This occurs only when the variance either "surpris[es the defendant] at trial and hinder[s] the preparation of his defense, or ... expos[es] him to the danger of a second prosecution for the same offense." Id. (citations omitted). However, "[a]s long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." Id. "Once a reviewing court determines that the facts incorrectly noted in the indictment do not concern an issue that is essential or material to a finding of guilt, the focus is properly upon whether the indictment provided the defendant with adequate notice to defend the charges against him." See also Floresca, 38 F.3d at 709-10 (footnote omitted). Thus, as long as the indictment provides the defendant with adequate notice of the charges against him and is sufficient to allow the defendant to plead it as a bar to subsequent prosecutions, a variance in proof at trial will not prejudice the defendant. See United States v. Miller, 471 U.S. 130, 134-35 (1985); Fletcher, 74 F.3d at 53; see, e.g., United States v. Redd, 161 F.3d 793, 795–96 (4th Cir. 1998) (no constructive amendment occurred where the indictment charged the defendant with possessing a black revolver whereas the evidence at trial showed it was silver, because the type of firearm was not an essential element of the crime charged).

To convict Petitioner of wire fraud pursuant to Title 18 Section 1343 of the United States Code, the government is required to prove that a defendant "(1) devised or intended to devise a scheme to defraud and (2) used ... wire communications [or caused wire communications to be used] in furtherance of the scheme." United States v. Wynn, 684 F.3d 473, 477 (4th Cir. 2012); see United States v. Raza, 876 F.3d 604, 614 (4th Cir. 2017), *cert. denied*, __U.S. __, 138 S.Ct. 2679, 201 L.Ed.2d 1073 (2018). "It is the physical act of transmitting the wire communication [or causing its transmission] for the purpose of executing the fraud scheme that creates a punishable offense, not merely the existence of a scheme to defraud," and "each ... wire transmission in furtherance of the fraud scheme constitutes a separate offense." United States v. Jefferson, 674 F.3d 332, 367 (4th Cir. 2012) (internal quotation marks omitted). As the Fourth Circuit noted on appeal, the Government proved the existence of a scheme with regards to Counts (2) through (23). See Pileggi, 751 Fed. Appx. at 374.

The Superseding Bill of Indictment alleges that Petitioner committed wire fraud against the victims identified by initials, the location of the wire source from within the United States "on or about" certain dates that were received in Costa Rica in "approximate amount[s]...." (3:06-cr-151, Doc. No. 113 at 15-16). For proof of the particular counts of wire fraud, the Government points to trial Exhibit 98. (Doc. No. 26). The allegations from the Superseding Bill of Indictment for each of the counts at issue are set forth in regular type in the chart below and the evidence in trial Exhibit 98, if different from the Superseding Bill of Indictment, are bolded:

| Count | Victim | Source of Wire | Location Wire Received | Date of Wire | Approximate Amount of Wire |
|---|---|---|---|---|---|
| 2 | W&ND<br><br>**ND** | Gackle, ND<br><br>**Jamestown, ND** | San Jose | 7/15/05 | $1,210<br><br>**$1,127** |

10

| 3 | W&ND | Gackle, ND | San Jose | 7/18/05 | $2,114 |
| | **ND** | **Jamestown, ND** | | | **$2,000** |
| 4 | W&ND | Gackle, ND | San Jose | 8/23/05 | $2,999 |
| | --- | --- | --- | --- | --- |
| 5 | DK | Strasburg, ND | San Jose | 8/29/05 | $2,905 |
| | | **Steele, ND** | **San Francisco** | | **$2,870** |
| 6 | DK | Strasburg, ND | San Jose | 9/20/05 | $2,114 |
| | | --- | --- | --- | --- |
| 7 | DK | Strasburg, ND | San Jose | 9/20/05 | $1,516 |
| | | **Steele, ND** | **Heredia** | **9/21/05** | **$1,424** |
| 8 | JH | Detroit Lakes, MN | San Jose | 10/11/05 | $1,789 |
| | | | **Desamparados** | | **$2,000** |
| 9 | AF | Ketchum, ID | San Jose | 10/26/05 | $1,208 |
| | | **Hailey, ID** | **Desamparados** | | **$1,125** |
| 10 | RL | Pacifica, CA | San Jose | 11/16/05 | $1,068 |
| | | | | | **$1,000** |
| 11 | MM | W. Palm Beach, FL | San Jose | 11/22/05 | $1,208 |
| | | | | | **$1,125** |
| 12 | PJ | Arlington, WA | San Jose | 11/22/05 | $1,000 |
| | **PJW** | | | | |
| 13 | JD | Martinsville, OH | San Jose | 12/6/05 | $1,069 |
| | | **Wilmington, OH** | | | **$1,000** |
| 14 | MB | Terre Haute, IN | San Jose | 12/7/05 | $1,208 |
| | | | **Desamparados** | | **$1,225** |
| 15 | CW | Huntersville, NC | San Jose | 12/8/05 | $1,208 |
| | | | | | **$1,125** |
| 16 | ED | Naples, FL | San Jose | 12/12/05 | $2,375 |
| | **EO** | **Bonita Springs, FL** | **Desamparados** | | **$2,250** |

| 17 | LS | Sun City, AZ | San Jose | 12/13/05 | $1,000 |
| 19 | LH | McDonald, TN | San Jose | 12/13/05 | $1,233 |
| | --- | --- | --- | --- | --- |
| 20 | CF | Salt Lake City, UT | San Jose | 12/15/05 | $1,068 |
| | --- | --- | --- | --- | --- |
| 21 | DS | San Antonio, TX | San Jose | 12/15/05 | $1,068 |
| | | | **Desamparados** | | **$1,000** |
| 22 | DC | Fort Wayne, IN | San Jose | 12/16/05 | $1,068 |
| | | | | | **$1,000** |
| 23 | RG | San Angelo, TX | San Jose | 12/16/05 | $1,208 |
| | | | | 12/15/05 | $1,125 |

See (3:06-cr-151, Doc. No. 113 at 15-16); (Doc. No. 26-1).

The Government concedes that it is not presently able to identify all of the evidence that supported the convictions in Counts (4), (6), (19), and (20), now that more than a decade has passed since Petitioner's trial. See (Doc. No. 25 at 14). The Court concludes that § 2255 relief should be granted on these Counts because the incomplete record makes it impossible at this juncture to determine the amount of variance between the Bill of Indictment and evidence of Petitioner's use of wire communications and any resulting prejudice. Accordingly, Counts (4), (6), (19), and (20) will be vacated. The existence of, extent of, and prejudice resulting from, the remaining variances will be addressed in turn.

The record conclusively refutes Petitioner's claims that any variance exists between the allegations and proof with regards to Count (17). Therefore, Plaintiff's claim of ineffective assistance will be denied with regards to Count (17) because he has not demonstrated either deficient performance or prejudice as no variance exists.

To the extent that Petitioner argues that there are variances between the allegations and proof with regards to the victims' names, Petitioner has waived this argument by acknowledging that the Western Union spreadsheet "did have the initials/names of the 22 specific people/crimes." (Doc. No. 13 at 6 n. 3). Moreover, the record demonstrates that the variances between the allegations and proof with regards to the victims' identifications were minor and could not have prejudiced Petitioner. For instance, Counts (2) and (3) allege "W&ND" whereas Exhibit 98 names only "ND;" Count (12) alleges "PJ" rather than "PJW" and Count (16) alleges "ED" instead of "EO" which was merely a scrivener's error. See (Doc. No. 25 at 12). Therefore, even if Petitioner had not waived this claim, it would be denied because these variances were minor and non-prejudicial.

The variance between the sources of the wires in Counts (2), (3), (5), (7), (9), (13), and (16) was likewise minor and non-prejudicial. The differences between the allegations in the Superseding Bill of Indictment and the proof in Exhibit 98 with regards to the sources of the wires are: Counts (2) and (3), Gackle North Dakota versus Jamestown North Dakota; Counts (5) and (7), Strasburg North Dakota versus Steele North Dakota; Count (9), Ketchum Idaho versus Hailey Idaho; Count (13), Martinsville Ohio versus Wilmington Ohio; and Count (16), Naples Florida versus Bonita Springs Florida.

The Fourth Circuit has found that variances between the location where wire transmissions originated, even when the cities at issue were located in different states, were not prejudicial. United States v. Mehta, 594 F.3d 277, 281 (4th Cir. 2010) (variance was not prejudicial because there was nothing in the record that indicated the defendant would have prepared differently for his defense if the indictment charge that charged a wire communication was between North Carolina and Maryland rather than between Michigan and Maryland); see also United States v.

13

Dupre, 462 F.3d 131, 140–43 (2d Cir.2006) (affirming the conviction where nothing in the record suggested that the defense would have prepared differently had the indictment specified a transfer via Western Union of $2,000 from Irving, Texas, instead of a transfer via Western Union of $2,000 from Liberty Township, Ohio). The Court concludes that the variances with regards to the specific city within each state from which the wires originated are minor and non-prejudicial.

With regards to the dates of the wires alleged in the Superseding Bill of Indictment and the dates reflected in Exhibit 98, there is a difference of one day for Counts (7) and (23). The Superseding Bill of Indictment states that the dates are approximate, having occurred "on or about" the dates alleged. (3:06-cr-151, Doc. No. 133 at 14). The victims' names in these Counts are consistent between the Superseding Bill of Indictment and Exhibit 98 for Counts (7) and (23). The one-day variance between the wire date that is alleged in the Superseding Bill of Indictment and Exhibit 98 could not have surprised Petitioner or exposed him to the danger of a second prosecution for the same offense under these circumstances. See generally United States v. Kimberlin, 18 F.3d 1156, 1158-59 (4th Cir. 1994) ("'Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required.'") (quoting United States v. Morris, 700 F.2d 427, 429 (1st Cir. 1983)).

The Court will next address the locations the wires were received with regards to Counts (5), (7), (8), (9), (14), (16), and (21). The Superseding Bill of Indictment alleged that each of these wires was received in San Jose, Costa Rica, however, Exhibit 98 reflects that the wires were received in San Francisco, Costa Rica for Count (5), Heredia, Costa Rica for Count (7), and Desamparados, Costa Rica for Counts (8), (9), (14), (16), and (21).

Courts may take judicial notice, in their discretion, of adjudicative facts[4] that are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201. Geographical information such as distance are "especially appropriate for judicial notice." United States v. Johnson, 726 F.2d 1018, 1021 (4th Cir. 1984). The Court takes judicial notice that the city of Desamparados is in the province of San Jose and lies on the southeastern edge of the city of San Jose, 4.5 kilometers from the city center; Heredia is a city 10 kilometers north of San Jose; and San Francisco is a district of San Jose.[5] Based on the foregoing, the Court concludes that any variances with regards to the locations the wires were received were minor and non-prejudicial.

Next, the Court will address the amounts of the wires differ between the Superseding Bill of Indictment and Exhibit 98 with regards to Counts (2), (3), (5), (7), (8), (9), (10), (13), (14), (15), (16), (21), (22), and (23). The Superseding Bill of Indictment charges the "approximate" amounts of the wires. (3:06-cr-151, Doc. No. 113 at 15); see generally United States v. Ross, 210 F.3d 916, 923 (8th Cir. 2000) (noting that wire fraud does not require proof of a precise dollar amount). The Government presented evidence at trial that Western Union charges a fee for wire transfer that is "approximately" $10 plus 5% of the principal, which varies by the amount wired. See (3:06-cr-151, Doc. No. 403 at 144) (Western Union employee Donald Rigby testifying that Western Union charges a sliding scale fee that is "approximately" $10 plus 5% of the principal). (Id., Doc. No. 402 at 126) (Agent Gonzalez testifying that Western Union charges a fee for wire transfers that

---

[4] "Adjudicative facts are simply the facts of the particular case." Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 509 n.6 (4th Cir. 2015) (quoting Fed. R. Ev. 201, Advisory Committee's note).

[5] Petitioner was informed of the Court's intent to take judicial notice of these facts and provided him with the opportunity to object, which he has not done. (Doc. No. 30).

varies by the amount wired). The amounts alleged in the Superseding Bill of Indictment are between $17 and $211 different from the amounts contained in Exhibit 98.[6] The amounts alleged in the Superseding Bill of Indictment were accurate enough to place Petitioner on notice of the charges, allow him to prepare for trial, and prevent him from being prosecuted again for the same offense. The Court finds that these variances are minor and non-prejudicial.

The Court concludes that Counts (4), (6), (19), and (20) should be vacated but that, to the extent that any variances occurred between the Superseding Bill of Indictment and the proof presented at trial with regards to the remaining Counts, these variances were minor. As previously noted, Petitioner fails to explain how any of the foregoing variances prejudiced his ability to understand the charges against him or prepare for trial or exposed him to the possibility of a second prosecution. Petitioner's claims of fatal variance and ineffective assistance of trial and appellate counsel will therefore granted as to Counts (4), (6), (19), and (20) but denied as to the remaining Counts.

The next question is the appropriate remedy. A district court has broad and flexible power to fashion an appropriate remedy in granting relief on collateral review. United States v. Williams, 740 Fed. Appx. 794, 795 (4th Cir. 2018) (citing United States v. Hillary, 106 F.3d 1170, 1171 (4th Cir. 1997)). Section 2255 authorizes the district court to take one of four distinct courses in remedying a successful § 2255 petitioner's unlawful sentence: (1) "discharge the prisoner," (2) "grant [the prisoner] a new trial," (3) "resentence [the prisoner]," or (4) "correct the [prisoner's] sentence." "[C]orrect" and "resentence" [in] § 2255 refers to different concepts. See Cunningham v. Scibana, 259 F.3d 303, 308 (4th Cir. 2001) ("The use of different terms within related statutes

---

[6] When Donald Rigby's $10 plus 5% formula to calculate the Western Union fee is applied to the wire amounts alleged in the Superseding Bill of Indictment, the results are between $1.70 and $310.45 different from the wire amounts contained in Exhibit 98, with only three of the Counts having discrepancies greater than $20.

generally implies that different meanings were intended." (quoting 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 194 (6th ed.2000))). "[T]he goal of § 2255 review is to place the defendant in exactly the same position he would have been had there been no error in the first instance." United States v. Hadden, 475 F.3d 652, 665 (4th Cir. 2007) (internal quotation marks omitted). A "downward correction of an illegal sentence does not constitute resentencing requiring the presence of a defendant." United States v. Erwin, 277 F.3d 727, 731 (5th Cir. 2001). The "new" sentence may be the same as the original sentence. United States v. Groves, 592 Fed. Appx. 145, 147 (4th Cir. 2014) (citing Hadden, 475 F.3d at 661 n. 9).

Petitioner originally asked that the 22 substantive wire fraud counts be vacated, the sentences set aside, a new PSR prepared, and a *de novo* sentencing hearing conducted on the conspiracy. (Doc. No. 13 at 7). On remand, however, Petitioner asks the Court to dismiss the Indictment. (Doc. No. 29 at 3). The Government requests that, if Counts (4), (6), (19) and (20) are vacated, the Court correct the Judgment without a resentencing hearing and leave the remaining Counts unchanged because each conviction and sentence is independent and concurrent.

The Court will vacate Counts (4), (6), (19) and (20) and leave the remainder of the Judgment unchanged. Hadden, 475 F.3d at 667 (the district court "corrected" § 2255 petitioner's sentence by "remov[ing] the error from [petitioner's] original sentence –and thereby made it 'right' – by excising the unlawful 60-month term on the § 924(c) count and re-entering [petitioner's] original 168 month term on the drug counts." Nor did the court "conduct any of the procedures that would have been required at a full-blown sentencing [i.e.,] [t]he probation office did not prepare a new PSR, the district court did not accept any new evidence or any legal argument, and [petitioner] was not given the opportunity to allocate, all of which would have been required if the entry of the Amended Judgment were considered a resentencing."); see also Rust v. United States,

725 F.2d 1153, 1154 (8th Cir.1984) (noting, where district court had vacated one of petitioner's convictions and modified multi-count sentence by striking the term of imprisonment on the vacated count, that "the trial court was not required to resentence [the petitioner]"). Petitioner's request for dismissal of the Superseding Bill of Indictment will be denied as it would result in a windfall to Petitioner rather than returning him to the position he would have had if no error had occurred. See Hadden, 475 F.3d at 665. Petitioner's request for a *de novo* resentencing will also be denied as the Court concludes that dismissal of the relevant charges is the appropriate remedy and that no resentencing hearing is required. See Williams, 740 Fed. Appx. at 795–96 (acknowledging that successful § 2255 petitioner's argument that a resentencing hearing was required under the "sentencing package theory" is foreclosed by Hadden).

The judgments and sentences in Counts (4), (6), (19) and (20) will therefore be vacated and the Second Amended Judgment will be corrected in accordance with this Order.

## IV.  CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is granted with regards to Counts (4), (6), (19) and (20), which are vacated, and the remaining claims are denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **GRANTED** in part and **DENIED** in part as stated in this Order.

2. The Second Amended Judgment, (Doc. No. 626), is **VACATED** as to Counts (4), (6), (19) and (20).

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

    Signed: August 6, 2019

Robert J. Conrad, Jr.
United States District Judge